**GOLDIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1581.

United States Court of Appeals, First Circuit.

Argued May 6, 1980.

Decided Aug. 19, 1980.

Peter R. Hicks, Boston, Mass., with whom Arthur P. Menard and Morgan, Brown, Kearns & Joy, Boston, Mass., were on brief, for petitioner.

J. Keith Gorham, Atty., Washington, D. C., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Richard B. Bader, Washington, D. C., were on brief, for respondent.

Before CAMPBELL and BOWNES, Circuit Judges, and DAVIS,* Judge, U.S. Court of Claims.

DAVIS, Judge.

Goldies, Inc., asks us to overturn an order of the National Labor Relations Board directing it to bargain with Local 1908, International Longshoremen's Association. The Board applies for enforcement. Goldies has refused to bargain on the ground that the bargaining unit certified by the Board is improper because it includes four persons who are "supervisors" within the meaning of section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11) (1976). We conclude that the Board's unit determination is correct in law and supported by substantial evidence, and we enforce the order.[1]

Goldies is a supplier of domestic and foreign automobile and truck parts to both wholesale and retail customers. The parts it sells are obtained from damaged vehicles which it purchases and dismantles. The employees whose status is disputed work at the employer's location on Willard Street in West Quincy, Massachusetts, where the company primarily handles parts for American-made cars and trucks. Samuel Goldstein, a co-owner of the business, is responsible for the day-to-day supervision of the entire operation.

Goldies employs six countermen at the Willard Street location, and it alleges that all six are supervisors under the terms of the National Labor Relations Act. The Board agreed that two of the countermen— Terry Goldman and Charles Testa—were supervisors, but included the other four in the bargaining unit.[2] In general, countermen are responsible for selling parts to customers. They take orders by telephone or over the counter, show merchandise, quote prices, and answer questions. On occasion they will take customers out into the yard where vehicles are stored to show parts. Sometimes they remove parts themselves, and on other occasions they assign other employees (partsmen) to remove a needed part.

At the representation hearing, Samuel Goldstein testified concerning the operation of the business and the authority of various

* Sitting by designation.

1. The issue of whether these four persons were "supervisors" (and therefore excluded from the bargaining unit) reaches us in a roundabout but routine way. The question first arose on a union petition seeking certification as the collective bargaining representative of a unit of the company's employees. A hearing was held on that issue, and the Regional Director found that the four persons were not supervisors, and directed an election among the unit employees. The Board summarily denied the employer's request for review. The union narrowly won the election and the company refused to bargain because of the inclusion of the four disputed employees.

The union then filed an unfair labor practice charge and the General Counsel issued a complaint. The employer's answer admitted the refusal to bargain, but raised again the inclusion of the four persons. The General Counsel filed a motion for summary judgment; the Board then transferred the case to itself, calling for a response which was forthcoming. The Board granted the motion for summary judgment. It found that the representation proceeding was binding, the company not having offered to adduce newly discovered or previously unavailable evidence, and not alleging any special circumstances requiring reexamination, and all issues raised by the company having been litigated or available for litigation in the prior proceeding. On the basis of the entire record, the Board then found the representation unit correct, and that the employer had improperly refused to bargain, committing unfair labor practices barred by §§ 8(a)(5), 8(a)(1), 2(6) and 2(7) of the Labor Relations Act.

The only question raised and debated on this petition for review and cross-application for enforcement is the propriety of including the four employees in the bargaining unit. The company does not challenge the procedure by which this issue was determined by the Board, or the latter's refusal to reconsider the original determination of the Regional Director.

2. The unit was described by the Board as follows:

"All full-time and regular part-time partsmen, countermen, drivers, disposal crew workers, janitors, mechanics, and utilitymen employed by the [Company] at its Willard Street and Douglas Street locations in West Quincy, Massachusetts, but excluding all office clerical employees, switchboard operators, guards and supervisors as defined in the Act."

employees. No employee testified. According to Goldstein, Goldman and Testa supervise the other countermen. The former two have the authority to hire and fire, and to recommend raises.[3] All the countermen were said to have the authority to issue oral or written reprimands to other employees, but none except Goldman and Testa have ever issued a written reprimand. Goldstein testified that all countermen had the authority to transfer employees, but "[g]enerally Testa and Goldman are the ones who do it." All countermen accept cash, but the others turn it over to Goldman or Testa who are responsible for any shortages. Countermen are also responsible for handling the time cards of other employees and are authorized to correct errors, but again, it is generally handled by Goldman or Testa.

■ Section 2(11) of the Act provides that:

The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

The parties agree that only one of the supervisory powers enumerated in section 2(11) need be present to confer the status of supervisor on an employee. *NLRB v. Metropolitan Petroleum Co.*, 506 F.2d 616, 618 (1st Cir. 1974); *NLRB v. Magnesium Casting Co.*, 427 F.2d 114, 117 (1st Cir. 1970), *aff'd on other grounds*, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed. 735 (1971). The mere fact that an employee may give others routine instructions, however, does not make him a supervisor for purposes of the Act. "The test must be the significance of his

judgments and directions." *Stop & Shop Co. v. NLRB*, 548 F.2d 17, 19 (1st Cir. 1977). This sounding is to be taken with respect to the fundamental twin principles that a supervisor represents the interests of his employer vis-a-vis other employees and is not "one of the gang who merely gives routine instructions." *Id.*

■ Goldies argues that the four countermen[4] are supervisors because (1) they possess authority to issue written and oral reprimands, and (2) they possess and exercise the authority to direct and transfer partsmen. In regard to its first point, petitioner emphasizes that it is the existence of section 2(11) authority, not its exercise, that is the predicate for a finding of supervisory status. That proposition is supported by the case law. *See Magnesium Casting Co.*, *supra*, at 117 n. 1. Such authority must actually exist, however, and must be more than a mere abstraction. *NLRB v. Leland-Gifford Co.*, 200 F.2d 620, 625 (1st Cir. 1952).

■ Goldstein's testimony that all countermen had authority to issue oral and written reprimands is gainsaid by his admission that no one but Goldman or Testa had issued a written reprimand. The record also shows that the authority the witness claimed was shared by all the countermen was exercised, for the most part, only by Testa or Goldman. The Board could conclude that, at best, the countermen had the power to exercise the supervisory function of giving reprimands no more than "spasmodically and infrequently." This is insufficient to establish regular supervisory status under the Act. *Leland-Gifford Co.*, *supra*, at 625; *NLRB v. Quincy Steel Casting Co.*, 200 F.2d 293, 296 (1st Cir. 1952); *see also Oil, Chemical & Atomic Workers Int'l Union v. NLRB*, 445 F.2d 237, 244 (D.C.Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 713, 30 L.Ed.2d 730 (1972).

**3.** One counterman, John Johnson, suggested a salary increase for another employee that was approved, but there was no testimony that this was a normal practice or was considered part of the countermen's duties.

**4.** We refer to the four countermen whose status is in dispute as the countermen and to Goldman and Testa by name.

The employer places primary reliance on the theory that the countermen are supervisors because they transfer and assign partsmen. The Board found that, to the extent the countermen assigned work or gave instructions, it was routine and did not involve the use of independent judgment. The Supreme Court and we have noted that, because of the infinite and subtle gradations of authority possible, the Board should be given wide latitude and a large measure of informed discretion "to determine those who as a practical matter fall within the statutory definition of a 'supervisor'." *See Marine Eng'rs Beneficial Ass'n v. Interlake S. S. Co.*, 370 U.S. 173, 179 n. 6, 82 S.Ct. 1237, 1240, 8 L.Ed.2d 418 (1962); *Magnesium Casting Co., supra*, at 117. We must sustain the Board's determination unless it is unsupported by substantial evidence. *Id.*

As we have said, the countermen function as salesmen of auto parts. There is no evidence that they plan the schedule of or regularly assign work to the partsmen, are generally responsible for overseeing the partsmen's work, or that the latter look generally to the countermen for instructions. The only evidence of possible assignment authority over partsmen is that countermen, on occasion, direct partsmen to remove needed parts from vehicles when needed by the counterman. The issue is whether this involves "independent judgment" or is merely "routine". Petitioner argues that Goldstein's uncontradicted testimony establishes that this occasional assignment of partsmen involved the exercise of independent judgment. He testified that in making these occasional assignments the countermen take into consideration the type of part needed, and the difficulty of the job, and they "[t]hey will normally pick a man to do a job that he's best suited to do." Goldstein's answers on cross-examination, however, indicate that his actual knowledge of who made these assignments was scant.[5] The Board could reasonably infer that Goldstein was testifying more as to what a counterman should do in making the judgment of which partsman to assign to a particular job, rather than as to what actually happened.

But even if we take the direct testimony at face value we think the Board could permissibly find that the occasional directions given by the counterman were routine. "The mere fact that an employee may give some instructions to others * * * does not indicate that he must identify with the interests of the employer rather than the employees." *Stop & Shop Co., supra*, at 19. The record does not compel or suggest the inference that the counterman could direct the partsman in matters involving the latter's judgment, and even the very minor amount of "judgment" on the part of a counterman in soliciting a particular partsman to remove a part does not necessarily rise above the routine exercise of a skilled worker's control over less capable employees, rather than reaching the level of a supervisor sharing the power of management. *NLRB v. Southern Bleachery & Print Works, Inc.*, 257 F.2d 235, 238–39 (4th Cir. 1958), *cert. denied*, 359 U.S. 911, 79 S.Ct. 588, 3 L.Ed.2d 575 (1959).[6]

5. Goldstein testified:

> Q. Other than Goldman or Testa how many of the other countermen have ordered any other employee to do a certain job?
> A. They can assign jobs to the men who are going to remove the parts.
> Q. But, other than Goldman and Testa have any other countermen ever assigned jobs?
> A. It's part of their responsibility. And, I would assume that they have done it.
> Q. But, what you're saying is you don't totally know of your own knowledge at this time?
> A. I can't pick any specific instance. But, in the course of business it would be necessary for them to assign—send men out for parts. Yes, I could say that without any question.

6. It is not immaterial that there is a clear separation, on the one hand, between Goldman and Testa, with general power of supervision, and the four countermen, on the other. This is illustrated symbolically by the fact that the former eat in a separate area with their fellow supervisor (for the truck section), while the latter eat with the rest of the employees.

Petitioner puts heavy reliance on the Seventh Circuit's decision in *Dynamic Machine Co. v. NLRB*, 552 F.2d 1195, *cert. denied*, 434 U.S. 827, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). In that case the Board found an employee to be a supervisor who the employer claimed did not exercise independent judgment. The court noted that the issue was a close one, but enforced the Board's order "[i]n view of [the] deference due the Board's practical expertise." *Id.* at 1201. The only possible factual similarity between that case and this is that that employee assigned work to other workers, taking account of their relative abilities, workloads, and familiarity with the machine involved. What distinguishes the cases are numerous indices of supervisor status present in *Dynamic Machine* but missing here. In *Dynamic Machine* the employee was a "working foreman" who assigned work to six other employees in a work place separated from the main plant. There was no other supervisor in this area. In addition to making work assignments, he relayed requests for time off and wage increases to management, distributed paychecks, corrected time cards, consulted with management about job performance, and attended management meetings. He was paid on a salary rather than an hourly basis, received a higher wage than the others, and was given keys to the plant. The single similarity between our facts and those in *Dynamic Machine* is clearly outweighed by the numerous differences. Much the same is true of *NLRB v. Metropolitan Petroleum Co. of Mass.*, 506 F.2d 616 (1st Cir. 1974), in which the dispatchers for an oil company (found by the court to be supervisors) had much wider authority with considerable independent discretion—regularly planning work, assigning drivers to jobs, and deciding whether to order overtime (or in some cases to use outside trucks and drivers) in the effort to get the oil delivered on time. There was far more directory activity than we have here. See likewise our recent opinion in *Maine Yankee Atomic Power Co. v. NLRB*, 624 F.2d 347, (1980).

*The petition for review is denied. The order will be enforced.*