March 15, 1993 [NOT FOR PUBLICATION]
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1351

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

and

GENERAL WAREHOUSEMEN, SHIPPERS, PACKERS,
RECEIVERS, STOCKMAN, CHAUFFEURS & HELPERS,
LOCAL UNION NO. 504, affiliated with THE
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS
OF AMERICA, AFL-CIO,

Intervenor,

v.

LINDENMEYR/MUNROE, A DIVISION OF
CENTRAL NATIONAL GOTTESMAN, INC.,

Respondent.

ON APPLICATION FOR ENFORCEMENT AND
PETITION FOR REVIEW OF AN
ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

Nathan L. Kaitz with whom Morgan, Brown & Joy were on brief for

respondent.
Julie Broido, Senior Attorney, National Labor Relations Board,

with whom Peter Winkler, Supervisory Attorney, National Labor

Relations Board, Jerry M. Hunter, General Counsel, National Labor

Relations Board, Aileen A. Armstrong, Deputy Associate General

Counsel, National Labor Relations Board, Yvonne T. Dixon, Acting

Deputy General Counsel, National Labor Relations Board and Nicholas E.

Karatinos, Acting Associate General Counsel, National Labor Relations

Board, were on brief for petitioner.
Brian W. Mellor with whom Mark D. Stern and the Law Office of

Mark D. Stern, P.C. were on brief for intervenor.

Per Curiam. The National Labor Relations Board has

petitioned to enforce its order against respondent

Lindenmeyr/Munroe, a division of Central National Gottesman,

Inc. ("the company"). The order directs the company to

bargain with Local 504 of the International Brotherhood of

Teamsters, Chauffeurs, Warehousemen and Helpers of America

("the union"). Agreeing that the order is valid, we order

its enforcement.

Lindenmeyr/Munroe operates a warehouse in Mansfield,

Massachusetts, from which it distributes paper products. The

company hired Donald Dooley on April 1, 1986 to serve as the

night shift foreman. On March 28, 1989, the union filed a

petition with the Board seeking to represent a unit of the

company's warehouse employees. The Board's Regional Director

issued a direction of election on May 10, 1989, permitting

Dooley to vote as an employee subject to the company's claim

that he was a "supervisor" within the meaning of section

2(11) of the National Labor Relations Act, 29 U.S.C.

152(11).

The Board conducted the election on June 8, 1989. Aside

from Dooley's vote, the tally of unchallenged ballots showed

eight votes for the company and eight for the union.

Dooley's ballot (which favored the union) was the deciding

vote. The Board's Regional Director then ordered a hearing

to be conducted before an administrative law judge to resolve

-3-

the issue of Dooley's status. The administrative law judge

conducted the hearing, determined that Dooley was not a

supervisor, and directed that his ballot be opened and

counted. The Board adopted the recommended order, and the

Regional Director thereafter certified the union. On June

21, 1991, the union requested the company to begin

bargaining. The company refused, citing improper

certification of the bargaining unit as its basis.

Upon the company's refusal to bargain, the union filed

an unfair labor practice charge. On August 15, 1991, the

Regional Director charged that the company had violated

sections 8(a)(1) and (5) of the Act, 29 U.S.C. 158(a)(1)

and (5). The company admitted the refusals to bargain but

asserted that the union was improperly certified because a

determinative vote was cast by a supervisor. On summary

judgment, the Board entered an order dated November 26, 1991,

finding that the company had violated the Act as charged and

requiring that it bargain. Enforcement of the order is now

sought, pursuant to section 10(e) of the Act, 29 U.S.C.

160(e).

The sole issue is whether there is "substantial

evidence" in the record to justify the Board's finding that

Dooley was not a supervisor. Universal Camera Corp. v. NLRB,

340 U.S. 474, 488 (1951). Section 2(11) of the Act provides:

The term "supervisor" means any
individual having authority, in the

-4-

interest of the employer, to hire,
transfer, suspend, lay off, recall,
promote, discharge, assign, reward or
discipline other employees, or
responsibly to direct them, or to adjust
their grievances, or effectively to
recommend such action, if in connection
with the foregoing the exercise of such
authority is not of a merely routine or
clerical nature, but requires the use of
independent judgment.

The statute is read in the disjunctive. Any one of the

enumerated capabilities can confer supervisory status upon

the individual. E.g., Maine Yankee Atomic Power v. NLRB, 624

F.2d 347, 360 (1st Cir. 1980). However, gradations of

authority ranging from "top executive to `straw boss' are so

infinite and subtle that of necessity a large measure of

informed discretion is involved in the exercise by the Board

of its primary function to determine those who as a practical

matter fall within the statutory definition of a

`supervisor.'" NLRB v. Swift and Company, 292 F.2d 561, 563

(1st Cir. 1961).

In this case, the administrative law judge found that

Dooley's work day was "almost indistinguishable" from that of

the other warehousemen on his shift. Dooley like the others

"picked" orders and loaded them on pallets for truck

delivery. He clocked in and out, was paid on an hourly

basis, had no office or desk, did no extra paperwork and

attended no management meetings. Hiring and firing was the

province of Dooley's own superiors. Although Dooley gave

-5-

certain orders, the administrative law judge found them to be

limited in scope, mechanical in nature, and involving no real

use of independent judgment. The Board could thus reasonably

find that Dooley exerted "the routine exercise of a skilled

worker's control over less capable employees, and was not a

supervisor sharing the power of management." Goldies, Inc.

v. NLRB, 628 F.2d 706, 710 (1st Cir. 1980).

The company argues that when it hired Dooley, his

superiors described his authority to him in broad terms,

including the power effectively to recommend discipline. The

administrative law judge found that this description of

Dooley's authority had been provided to Dooley "once upon a

time," but he also found that Dooley's actual authority did

not correspond to the original description. While it is the

existence and not the exercise of authority that establishes

supervisory status, NLRB v. Leland-Gifford Co., 200 F.2d 620,

625 (1st Cir. 1952), we think that the existence of Dooley's

authority was reasonably in dispute in this case.

Specifically, the administrative law judge found no

indication that Dooley himself had ever exercised

disciplinary authority, recommended discipline or even

reported any misbehavior of others to superiors. There was

no evidence that other workers had ever been told that Dooley

had such authority. Indeed, while Dooley could report or

recommend anything to management, Dooley himself observed

-6-

that "anybody else could" too. The picture painted by these

and other facts strongly suggests that neither Dooley nor

anyone else behaved as if he had been entrusted with any

special disciplinary authority. In sum, the Board's decision

is a reasonable evaluation of the facts based upon

substantial evidence.

The petition for enforcement is granted.

-7-