989 F.2d 484
 143 L.R.R.M. (BNA) 3120
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
General Warehousemen, Shippers, Packers, Receivers,
Stockman, Chauffeurs & Helpers, Local Union No. 504,
affiliated with the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, Intervenor,
v.
LINDENMEYR/MUNROE, A Division of Central National Gottesman,
Inc., Respondent.
 No. 92-1351
 UNITED STATES COURT OF APPEALS,
FIRST CIRCUIT
 March 15, 1993
 
 ON APPLICATION FOR ENFORCEMENT AND PETITION FOR REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD
 Nathan L. Kaitz with whom Morgan, Brown & Joy were on brief for respondent.
 Julie Broido, Senior Attorney, National Labor Relations Board, with whom Peter Winkler, Supervisory Attorney, National Labor Relations Board, Jerry M. Hunter, General Counsel, National Labor Relations Board, Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, Yvonne T. Dixon, Acting Deputy General Counsel, National Labor Relations Board and Nicholas E. Karatinos, Acting Associate General Counsel, National Labor Relations Board, were on brief for petitioner.
 Brian W, Mellor with whom Mark D. Stern and the Law Office of Mark D. Stern, P.C. were on brief for intervenor.
 N.L.R.B.
 ORDER ENFORCED.
 Before Selya, Circuit Judge, Campbell, Senior Circuit Judge, and Boudin, Circuit Judge.
 Per Curiam.
 
 
 1
 The National Labor Relations Board has petitioned to enforce its order against respondent Lindenmeyr/Munroe, a division of Central National Gottesman, Inc. ('the company'). The order directs the company to bargain with Local 504 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ('the union'). Agreeing that the order is valid, we order its enforcement.
 
 
 2
 Lindenmeyr/Munroe operates a warehouse in Mansfield, Massachusetts, from which it distributes paper products. The company hired Donald Dooley on April 1, 1986 to serve as the night shift foreman. On March 28, 1989, the union filed a petition with the Board seeking to represent a unit of the company's warehouse employees. The Board's Regional Director issued a direction of election on May 10, 1989, permitting Dooley to vote as an employee subject to the company's claim that he was a 'supervisor' within the meaning of section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11).
 
 
 3
 The Board conducted the election on June 8, 1989. Aside from Dooley's vote, the tally of unchallenged ballots showed eight votes for the company and eight for the union. Dooley's ballot (which favored the union) was the deciding vote. The Board's Regional Director then ordered a hearing to be conducted before an administrative law judge to resolve the issue of Dooley's status. The administrative law judge conducted the hearing, determined that Dooley was not a supervisor, and directed that his ballot be opened and counted. The Board adopted the recommended order, and the Regional Director thereafter certified the union. On June 21, 1991, the union requested the company to begin bargaining. The company refused, citing improper certification of the bargaining unit as its basis.
 
 
 4
 Upon the company's refusal to bargain, the union filed an unfair labor practice charge. On August 15, 1991, the Regional Director charged that the company had violated sections 8(a)(1) and (5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5). The company admitted the refusals to bargain but asserted that the union was improperly certified because a determinative vote was cast by a supervisor. On summary judgment, the Board entered an order dated November 26, 1991, finding that the company had violated the Act as charged and requiring that it bargain. Enforcement of the order is now sought, pursuant to section 10(e) of the Act, 29 U.S.C. 160(e).
 
 
 5
 The sole issue is whether there is 'substantial evidence' in the record to justify the Board's finding that Dooley was not a supervisor. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). Section 2(11) of the Act provides:
 
 
 6
 The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
 
 
 7
 The statute is read in the disjunctive. Any one of the enumerated capabilities can confer supervisory status upon the individual. E.g., Maine Yankee Atomic Power v. NLRB, 624 F.2d 347, 360 (1st Cir. 1980). However, gradations of authority ranging from 'top executive to 'straw boss' are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor." NLRB v. Swift and Company, 292 F.2d 561, 563 (1st Cir. 1961).
 
 
 8
 In this case, the administrative law judge found that Dooley's work day was 'almost indistinguishable' from that of the other warehousemen on his shift. Dooley like the others 'picked' orders and loaded them on pallets for truck delivery. He clocked in and out, was paid on an hourly basis, had no office or desk, did no extra paperwork and attended no management meetings. Hiring and firing was the province of Dooley's own superiors. Although Dooley gave certain orders, the administrative law judge found them to be limited in scope, mechanical in nature, and involving no real use of independent judgment. The Board could thus reasonably find that Dooley exerted 'the routine exercise of a skilled worker's control over less capable employees, and was not a supervisor sharing the power of management.' Goldies, Inc. v. NLRB, 628 F.2d 706, 710 (1st Cir. 1980).
 
 
 9
 The company argues that when it hired Dooley, his superiors described his authority to him in broad terms, including the power effectively to recommend discipline. The administrative law judge found that this description of Dooley's authority had been provided to Dooley 'once upon a time,' but he also found that Dooley's actual authority did not correspond to the original description. While it is the existence and not the exercise of authority that establishes supervisory status, NLRB v. Leland-Gifford Co., 200 F.2d 620, 625 (1st Cir. 1952), we think that the existence of Dooley's authority was reasonably in dispute in this case.
 
 
 10
 Specifically, the administrative law judge found no indication that Dooley himself had ever exercised disciplinary authority, recommended discipline or even reported any misbehavior of others to superiors. There was no evidence that other workers had ever been told that Dooley had such authority. Indeed, while Dooley could report or recommend anything to management, Dooley himself observed that 'anybody else could' too. The picture painted by these and other facts strongly suggests that neither Dooley nor anyone else behaved as if he had been entrusted with any special disciplinary authority. In sum, the Board's decision is a reasonable evaluation of the facts based upon substantial evidence.
 
 
 11
 The petition for enforcement is granted.